Manuel L. Miró, Appellant, v. The Industrial Commission of Puerto Rico et al., Respondents.

No. 198.  Argued May 20, 1940.—Decided June 10, 1940.

*G. Benítez Gautier* and *Jorge Benítez Gautier* for appellant. *M. León Parra* for the Industrial Commission. *George A. Malcolm, Attorney General, Emilio de Aldrey, Assistant Attorney General,* and *Víctor J. Vidal,* Legal Advisor of the State Fund, for the respondent Manager of the said Fund.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The facts of this case are stated in *Montaner* v. *Industrial Commission,* 54 P.R.R. 533, and in *Miró* v. *Industrial Commission,* 56 P.R.R. 121. From these cases we transcribe the following paragraphs which we consider as pertinent to the decision of the present appeal:

"In order to prepare his bid for a contract entitled 'Improvement and Extension of the Ponce Water Works' (*Mejoras al Sistema de Distribución del Acueducto de Ponce*), Manuel L. Miró consulted the Manager of the State Fund as to the classification and premium rate which would be applied to such a project under the Workmen's Compensation Act. He was informed that the rate fixed would be that corresponding to classification code No. 7520 or $1.68 per $100 paid in wages. The contractor was awarded the contract and on April 26, 1937, took out policy No. 8708 under the rate and classification code mentioned.

"On May 19, 1937, the Manager of the State Fund notified Miró that a mistake had been made in the issuance of his policy and that it would have to be canceled or altered so as to conform to classification code No. 6319 with a rate of 5.75 per cent instead of 1.68 per cent. This controversy was satisfactorily settled, up to the end of the fiscal year 1936–1937 which was June 30, 1937.

"When the policy had to be renewed for the year 1937–38, the Manager of the State Fund insisted that Miró's contract fell under classification code No. 6319 the rate of which had been increased to 10.51 per cent. As the employer was bound to insure under the terms of the contract, he paid the premium for the first semester, amounting to $3,678.50, under protest. Apparently he has never paid the premium corresponding to the second semester. The contract was finished in April of 1938 and on June 10, 1938, the employer filed a petition with the Industrial Commission, under sec-

tion 24 of Act No. 45 of 1935 (Session Laws, p. 250, 302 *et seq.*),. to review the premium rate and classification applied by the Manager of the State Fund for the year 1937–1938. In this petition the employer raised the following questions:

" ' (1) That the Manager of the State Fund erred in including the employer's contract under code (*clave*) 6319 instead of 7520;

" ' (2) That the Manager had no authority to make new classifications after May 1, 1937, according to section 23 of the Workmen's Compensation Act;

" ' (3) That the Manager could not alter the terms under which the original policy had been issued inasmuch as from that moment there was created a contract for the duration of petitioner's project;

' " ' (4) That the Manager abused his discretion in raising the premium rates for the type of work covered in this case; and

" ' (5) That the Manager erred in assessing the petitioner at the new rate of 10.51%.'

"The attorney for the Manager of the State Fund answered and subsequently interposed a motion to dismiss the petition on the ground that the employer's cause of action had prescribed in part, and was academic in view of subdivisions (3) and (4) of section 24 of the act. This section reads:

" ' *        *        *        *        *        *        * '

"The Industrial Commission, by decision of December 16, 1938, refused to dismiss the proceeding for review because it was of the opinion that there was an important question involved as to whether an employer who insures for the duration of a specific job is not in a different position with regard to classifications than he who employs and insures workmen regularly, year in and year out. The commission recites the facts somewhat differently from the petitioner. Whereas the petitioner states in his petition that the Manager, in May of 1937, did not insist on pressing his contention that Miró's job had been erroneously classified under code No. 7520 instead of 6319 and thus insist on collecting $5.75 instead of $1.68 per $100 pay roll, the Commission apparently assumes the contrary to have been the fact, inasmuch as it proceeds to approve the Manager's right and power to correct a classification made under a supposed mistake of fact. What the Commission finds questionable is whether the Manager, after correcting the classification in May, from No. 7520 to No. 6319, *could,* two months later, increase the premium rate for that same classification from $5.75 to $10.75, at least with reference to a special job."

This court finding that the doubt which had arisen among the members of the commission was not frivolous, affirmed the order of the commission of December 16, 1938, and remanded the case for further proceedings. 54 P.R.R. 533.

"A hearing was subsequently held and the final order of the commission definitely deciding the case was rendered August 31, 1939. It reads:

"" *       *       *       *       *       *       *

""This order of the commission was signed by the President, Mr. M. León Parra, and Commissioner Juan M. Herrero. Commissioner F. Paz Granela dissented. He is of the opinion that the manager cannot issue a policy to extend beyond the current fiscal year; that before he issues new policies he must revise the premium rates, and raise or lower them as the case may be; and that then no policy is in force.

"The State Insurance Fund moved for reconsideration. It was denied, but since no appeal has been taken by the Fund the matter need not be discussed.

"The petitioner also moved for a reconsideration. It too was denied. The petitioner's contention was that when the act says 'For any term or part of a semester' the words 'for any term' are disjunctive and do not mean 'term of a semester.' The commission thought that when the act says 'any term or part of a semester' it means conjunctively—any 'term or part'—of a semester and not the disjunctive interpretation for which petitioner contends.

"The petitioner has asked for a writ of review and assigns only one error:

"" 'The respondent, the Industrial Commission of Puerto Rico, committed a grave error of law in deciding that because the appellant's work lasted more than six months, he is not, by that reason, a temporary or occasional employer, and should therefore be considered as a permanent employer for the purpose of the premium rate to be paid for the insured job.' "

The parties having been heard and the appeal submitted, this court held, on February 14, 1940, (*Miró* v. *Industrial Commission*, 56 P.R.R. 121) in brief as follows:

1. That the Workmen's Compensation Act (Act No. 45 of 1935 (1), p. 250) contemplates two kinds of employers: permanent and temporary.

2. That the petitioner was a temporary employer.

3. That when a temporary employer takes out a policy, with the Manager of the State Fund, the same stands to the end of the period needed to finish the work; that is, that the policy is not issued for the fiscal year, but for the duration of the work.

4. That although it is the custom more convenient for the Manager of the Fund, to issue policies only up to June 30 of each year, when a temporary employer renews his policy, the manager is not only precluded from raising or lowering the rates, but from changing the original terms thereof.

The appellant Manuel L. Miró then requested the Manager of the Fund, in accordance with the holding of this court, to proceed to liquidate ". . . . his policy on the Project for Improvement and Extension of the Ponce Waterworks at the rate originally assigned and fixed, that is, $1.68 per $100 paid in wages and hence demanded the return of $2,388.02 improperly collected . . . . and paid under protest," and the manager refused to comply with the request and on the contrary demanded that the appellant should pay to the State Insurance Fund the additional sum of $1,054.97, claiming that the decision rendered by the Industrial Commission on December 6, 1938, definitely determined in favor of the manager his right to change the classification of the policy issued to the appellant, and that as he had changed the classification to No. 6319, appellant's policy should be liquidated on the basis of $5.75 per $100 paid in wages.

Thereupon Miró applied to the Industrial Commission, which by a decision of April 4, 1940, affirmed the action of the manager. It is from that decision that the present appeal has been taken, and the appellant assigned two errors, as follows:

"1. The Industrial Commission erred in holding that by its decision of December 16, 1938, it was definitely settled:

"(a) That the manager had made a mistake in applying classification 7520 to the work of the appellant.

"(b) And that, as the manager had made a mistake in such classification, he could lawfully correct the same and approval was given

to his right to change the original classification No. 7520 at the rate of 1.68 per $100 pay roll to classification No. 6319 at the rate of 5.75 per $100 pay roll.

"2. The Industrial Commission erred in interpreting the legal effect of the opinion rendered by this Hon. Court on February 14, 1940."

■ Let us examine the first assignment. Regarding paragraph (*a*), we think that inasmuch as a question of fact is involved therein this court is precluded, by operation of the law regulating these proceedings for review, from deciding the same.

■ Now, as regards paragraph (*b*), the reason, among others, which the Industrial Commission had for holding in its above-mentioned decision of December 16, 1938, that the Manager of the State Fund had the right to change the original classification No. 7520 to No. 6319, was that, as there was a mistake in the consent given by the manager with respect to the substance of the thing, in accordance with sections 1217 and 1218 of the Civil Code (1930 ed.), said consent was void and hence the contract was nonexistent.

It is provided by section 1217 that consent given by error, violence, intimidation, or deceit shall be void, and by section 1218, that in order for error to invalidate consent, it must have existed with respect to the substance of the thing which was the subject matter of the contract or to those conditions of the same which were the principal inducement to its execution. Even if it were conceded that the Manager of the State Fund made a mistake in assigning classification No. 7520 to the work of the appellant, and that such a mistake or error is of the kind which invalidates the consent, it would always result that the commission erred in concluding that the manager thereby had the power to change classification No. 7520 to No. 6319, since in accordance with section 1254 of the Civil Code (1930 ed.) the action for nullity can not be exercised by ". . . those who caused the intimidation, or violence or employed deceit, or caused the error . . . ." The full text of said section 1254 is as follows:

"Section 1254. — The action for nullity of contracts may be brought by those who are principally or subsidiarily obligated by virtue thereof. Persons with capacity cannot, however, allege the incapacity of those with whom they contracted; neither those who caused the intimidation or violence, or employed deceit, or caused the error, can base their action on these defects of the contract."

Commenting on the equivalent section (1302) of the Spanish Civil Code, Manresa in his *Comentarios al Código Civil* (2d ed.), Vol. 8, p. 780, says:

"*Lack of responsibility for the alleged defect.* This is the second of the necessary conditions for bringing the action. Some express it by saying that the latter can only be brought by the *injured party;* but this statement might lead to erroneous ideas, since nullity is independent from lesion as appears from section 1300, and the party finally benefited by the contract is entitled to bring an action to annul the same for defects not chargeable to him, whereas no such authority is granted by law if the case is otherwise.

"Simple as is the rule set forth in the second paragraph of this section, it may be complicated where, as it sometime happens, two defects coexist in the contract occasionally derived from the same fact, for example, a contract made with an incapacitated person by one who is ignorant of such incapacity; in this instance it is indisputable that the person *sui juris* can not demand the annulment based in the incapacity of the other contracting party, but he may set up any mistake or deceit which he may have suffered, if the circumstances of the subject were of a decisive influence in the contract."

Therefore, this is not the case where the element of consent is lacking, but where it was given although erroneously.

As it does not appear from the facts that appellant Miró has sought to annul the contract which he had made with the Manager of the State Fund, and as it is evident that in accordance with the above-cited sections of the Civil Code, the Manager of the State Fund would not be entitled to bring an action for nullity inasmuch as he was the person responsible for the error, it must be held that the contract was in full force and effect, and that therefore the Industrial Com-

mission erred in deciding that the manager had power to change the classification which he had applied to the work that the appellant was to perform.

In view of the foregoing, it is unnecessary to consider the second error assigned and, therefore, the decision rendered by the Industrial Commission of Puerto Rico on April 4, 1940, in case No. 4819 of said commission, must be reversed and the case remanded with directions that the Manager of the State Insurance Fund be ordered to liquidate the contract of insurance entered into with the appellant, at the original rate of 1.68 per $100 pay roll, and consequently, to return to the appellant the amount of any other payment made by the latter.